**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| FELICIA BEAL, | : | Case No. 3:15-cv-00429 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner Of The Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

---

**REPORT AND RECOMMENDATIONS**[1]

---

## I.   <u>Introduction</u>

Plaintiff Felicia Beal brings this case under 42 U.S.C. § 405(g) challenging the

Commissioner of Social Security Administration's final decision to deny her applications

for Disability Insurance Benefits and Supplemental Security Income.   She asserts here, as

she did before the Administration, that beginning on July 19, 2012, her anxiety and

depression constitute disabilities and qualify her for benefits under the Social Security Act.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the

Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply, (Doc. #11), the

administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order remanding this case for an award of benefits or,

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

alternatively, for further administrative proceedings.   The Commissioner seeks an Order affirming the ALJ's decision.

## II.    Plaintiff's Vocational Profile and Testimony

On the date Plaintiff's asserted disabilities began, she was 45 years old.   Her age placed her in the category of "younger person" under Social Security Regulations.   *See* 20 C.F.R. §§ 404.1563(c); 416.963(c).[2]   She has a limited education.   *See* 20 C.F.R. § 404.1564(b)(3).   She has worked in the past as a housekeeper.

Plaintiff testified at an administrative hearing in January 2014 that she could no longer work because she "sees things."   (Doc. #6, *PageID* #246).   She sees "people standing there" or "feels like somebody's in [her] house."   *Id*.   She explained, "I've actually run out of my house thinking somebody's in there.   And I have a habit of being scared."   *Id*.   She sees things about three times a week.   When she feels someone is there, it is part of feeling scared.   It occurs about twice a week, and it occurs separately from incidents when she sees things.   *Id*. at 253.   She gets scared because it feels like someone is after her or "something [is] going to happen."   *Id*.   It happens when she is home or when she is outside her home.   The feeling can last hours.

Plaintiff testified that she does not like being around other people and instead likes to be by herself a lot.   *Id*. at 247.   She has thoughts of suicide twice a week and has a plan − to "take pills."   *Id*. at 255.   She thinks about committing suicide a couple of times a week.   The medication she takes has decreased the number of times she has suicidal

_____

[2] The remaining citations will identify the Regulations applicable to applications for Disability Insurance with full knowledge of the corresponding Supplemental Security Income Regulations.

thoughts.   She sleeps well when she is on her medications, but she has nightmares about two times a week.   She explains, "I had a dream that I was raped and you couldn't tell me that it didn't happen.   I was wondering if I should call the police.   It was horrible."   *Id*. at 256.

As to her daily activities, she has difficulty doing the dishes and they just pile up in the sink because she cannot focus.   She starts tasks but does not finish them.   *Id*. at 256-57.   She is able to fix her own food and do laundry.   *Id*. at 248.   She does not do yard work or gardening, she takes public transportation, and she sometimes drives places.   She goes to the grocery store but doesn't stay long.

### III.   <u>Medical Opinions</u>

In October 2012 clinical psychologist Daniel Hrinko examined Plaintiff at the request of the Ohio Division of Disability Determination.   (Doc. #6, *PageID* #s 657-61).   Dr. Hrinko diagnosed Plaintiff with depressive disorder NOS[3], anxiety disorder NOS, and polysubstance disorder in remission by report.[4]   *Id*. at 659.   He assessed Plaintiff's current global assessment of functioning at 45, with the highest score in the past year at 50. *Id*.

Based on his clinical interview, Dr. Hrinko reported his summary and conclusions as follows:

---

[3]  NOS refers to conditions Not Otherwise Specified in the <u>Diagnostic and Statistical Manual of Mental Disorders, Text Revision</u>, 4th ed. (2000).

[4]  Plaintiff's medical records include documents showing that she went through a substance-abuse-treatment program from September 3, 2010 to April 4, 2012.   (Doc. #6, *PageID* #s 687-708).

Ms. Beal has a long history of being abused in relationships including throughout her childhood. In addition, she has been in many relationships that have included physical and sexual abuse. As a result of these traumatic experiences, she acknowledges having difficulty trusting anyone and is constantly vigilant for the potential threats to harm her. Her primary means of coping with these threats has been to use mood altering drugs and to avoid social situations where she believes she is at risk. This contributed to her becoming increasingly isolated. She reported completing a substance use treatment program and abstaining from the use of all mood altering substances. Since that time, she reported experiencing more powerful symptoms of anxiety. Lastly, she is suffering from congestive heart failure. In many situations, her anxiety results in a rise in blood pressure and shortness of breath causing her to fear she might die. As a reason, she is likely to go to the emergency room and seek medical treatment.

(Doc. #6, *PageID* #660).

In the four areas of mental work abilities, Dr. Hrinko first found that Plaintiff had no cognitive impairments in understanding, remembering, and carrying out instructions, but "certain situations will contribute to moderate to high levels of anxiety which will interfere with her ability to focus on these tasks resulting in moderate impairments." *Id*. With respect to maintaining attention, concentration, persistence and pace to perform tasks, Dr. Hrinko believed that Plaintiff would likely "have difficulty focusing her attention and concentration on work related tasks due to the intrusive nature of her anxieties and fears." *Id*. In the area of responding appropriately to supervision and co-workers in a work setting, Dr. Hrinko concluded that Plaintiff's "assumptions about others being a threat to her safety and her ongoing fears of being hurt will likely make it extremely difficult for her to establish and maintain appropriate workplace relationships" and that her history

4

provided examples of her fears leading to conflicts that resulted in her being fired from jobs. *Id*. Lastly, with regard to responding appropriately to work pressures in a work setting, Plaintiff was "likely to have significant problems" making it to work and being around people. *Id*. at 661.

In October 2013, licensed social worker Nancy K. Allen completed a form and wrote a letter assessing Plaintiff's mental work abilities. (Doc. #6, *PageID* #s 735-39). Ms. Allen is designated as an "Outpatient Psychotherapist" with Mental Health Services for Clark and Madison Counties, Inc. *Id*. at 735.

In the social interaction domain, Ms. Allen found one moderate, two marked, and one extreme degree of limitation. Based on the definitions provided in the form, these limitations denote significant impairments in her ability to respond appropriately to co-workers and peers, respond appropriately to instruction or criticism from supervisors, and to maintain socially appropriate behavior. *Id*. at 736. In the area of sustained concentration and persistence, Ms. Allen found marked and extreme limitations performing at expected production levels, maintaining attention and concentration for more than brief periods of time, and completing work tasks at a consistent pace. *Id*. at 737. Similarly, the domain of adaptation also included marked and extreme levels of impairment in multiple abilities, particularly in responding appropriately to changes in the work setting, and behaving predictably, reliably, and in an emotionally-stable manner. *Id*.

Ms. Allen explained, in part, that Plaintiff "suffers from paranoid ideation of such severity she has great difficulty being around more than 1-2 people at a time, even people

5

she knows well.   Her severe paranoia causes her to isolate, be fearful of being in public places, and avoid being around people in general, especially meeting new people."   *Id.* at 738.

IV.   <u>**Standard of Review and ALJ Motta's Decision**</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met— that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"   *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...."   *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.   "(E)ven if supported by substantial evidence, 'a

6

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

It fell to administrative law judge (ALJ) Elizabeth A. Motta to evaluate the evidence connected to Plaintiff's benefit applications. She did so by considering each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ concluded in the main:

1.  Plaintiff had not worked a substantial paid job since the date of her claimed disability onset (July 19, 2012).

2.  She the severe impairments of "cardiomyopathy with a history of congestive heart failure secondary to chronic hypertension, an obese body habitus, depressive and anxiety disorders, and a history of polysubstance abuse in reported remission…." (Doc. #6, *PageID* #221).

3.  She does not have an impairment that satisfies the criteria needed to establish a disability under the Listing of Impairments.[5]

4.  She could not perform any of her past relevant work. *Id*. at 230. The ALJ based this conclusion on her assessment of Plaintiff's residual functional capacity, or the most she could do in a work setting despite her limitations.[6] The ALJ found:

    > [Plaintiff] has the residual functional capacity to perform light work … except [she] is able to stand or

---

[5] The Commissioner's Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[6] *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

7

> walk up to four hours total in an eight-hour day. The
> claimant does not retain the capacity to climb ladders,
> ropes, or scaffolds, or to climb ramps or stairs on more
> than an occasional basis. [She] is able to stoop, kneel,
> crouch, and/or crawl occasionally, and to balance
> without restriction. [She] should avoid concentrated
> exposure to extreme temperatures and humidity, to
> known pulmonary irritants, and to hazards. Moreover,
> [she] retains the capacity to tolerate occasional and
> superficial interaction with co-workers and the general
> public; she is able to carry out simple, routine, repetitive
> tasks in an environment without the pace demands
> characteristic of assembly line work, and she is able to
> adapt to occasional changes in a low stress work setting
> and to engage in occasional decisionmaking.

*Id.* at 225.

> 5. She is able to perform a significant number of jobs that exist in the national
>     economy. *Id.* at 231.

In the end, ALJ Motta's findings led her to determine (as previously noted) that

Plaintiff was not under a benefits-qualifying disability.

## V.   <u>Discussion</u>

Plaintiff contends that the ALJ erred by rejecting the opinions provided by Dr.

Hrinko. She reasons that rather than relying on evidence in the record, the ALJ

improperly relied on her own improper and unsubstantiated assertions.

The Commissioner argues that the ALJ gave numerous good reasons for not

crediting Dr. Hrinko's opinions, and in doing so, she reasonably assessed his opinions.

Dr. Hrinko is a one-time examining psychologist. In general, more weight is given

to the opinions of examining medical sources than is given to the opinions of

non-examining medical sources. *See* 20 C.F.R. § 404.1527(c)(1). To determine how much weight to place on a one-time examiner's opinions, ALJs consider a host of factors, including supportability, consistency, specialization, and other pertinent factors. 20 C.F.R. §§ 404.1527(c)(3)-(6).

ALJ Motta found that Dr. Hrinko's opinions were flawed for several reasons. The ALJ began by recognizing Dr. Hrinko's opinion that Plaintiff would likely have difficulty focusing her attention and concentration on work-related tasks due to the intrusive nature of her anxiety and fears. The ALJ found this to be inconsistent with Dr. Hrinko's discussion of Plaintiff's cognitive functioning, which was mostly positive. The ALJ pointed to Dr. Hrinko's report that Plaintiff's "ability to handle abstractions, basic calculations, or to interpret proverbs was unimpaired. She was able to recall objects requested of her as well as information from her distant past, recent past, and immediate circumstances without difficulty…." (Doc. #6, *PageID* #227 (quoting *PageID* #659)). The ALJ, however, overlooked or ignored that Dr. Hrinko also commented, "She does report periods of times when her anxiety and panic rise to the point where she is unable to concentrate or focus her attention…." *Id.* By missing this aspect of Dr. Hrinko's report, the ALJ identified an inconsistency that does not exist in Dr. Hrinko's report. Indeed, there is nothing inconsistent about a person who demonstrates mostly positive cognitive functioning but at times suffers periods of increasing anxiety and panic that leave her unable to concentrate or focus. Dr. Hrinko's functional assessment explains this: "[Plaintiff] is likely to have difficulty focusing her attention and concentration on work

related tasks due to the intrusive nature of her anxieties and fears regarding potential threats to her safety. ….”  *Id*. at 660.

Similarly, Dr. Hrinko opined, “[Plaintiff] shows no evidence of cognitive impairments that would prevent her from understanding, remembering, or carrying out instructions.   There are indications that certain situations will contribute to moderate to high levels of anxiety which will interfere with her ability to focus on these tasks resulting in moderate impairments.”  *Id*. at 660.   It was error for the ALJ to find Dr. Hrinko’s report to be inconsistent without considering the consistency between Plaintiff’s cognitive functioning and the periodic nature of her increasing anxiety and panic.   “[A] substantiality of evidence evaluation does not permit a selective reading of the record. ‘Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.’”  *Brooks v. Comm’r of Soc. Sec.*, 531 F. App’x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

The ALJ also rejected or discounted Dr. Hrinko’s opinions, explaining that Dr. Hrinko’s “mental status findings appear to largely reflect only claimant’s complaints, and no objective observations of her mood or demeanor.”  (Doc. #6, *PageID* #227).   The ALJ similarly observed that Dr. Hrinko’s assessment of Plaintiff’s GAF at 45 (referring to serious symptoms) was based on claimant’s allegations rather than “his own objective

10

findings, which he skimped on in favor of just reciting claimant's allegations." *Id*.

Relying on *McClanahan v. Astrue,* No. 1:09cv000746, 2011 WL 691365, *10 (S.D. Ohio 2011) (Litkovitz, MJ), the Commissioner contends that where a doctor's opinion is simply a catalogue of a plaintiff's complaints, the ALJ is not required to accept the doctor's opinions. *McClanahan*, however, is factually distinguished from the present case because here, Dr. Hrinko did not simply catalogue Plaintiff's complaints. The following discussion of the ALJ's missteps illuminates this.

There are two problems with the ALJ's explanation. First, the ALJ overlooks that Dr. Hrinko carefully considered Plaintiff's reliability when reaching his conclusions about her mental work abilities. In his "Reliability Estimate," he wrote, "Ms. Felicia Beal was deemed to be a reliable informant due to the consistency of information provided by her during the interview, the level of detail she was able to provide, and her ability to acknowledge her own strengths and weaknesses. She reported areas of intact functioning as well as areas impaired by symptoms." *Id*. at 660. These particular findings reveal that Dr. Hrinko did not blindly credit Plaintiff's subjective reports. Instead, he carefully assessed her reliability in a substantive and meaningful manner. The ALJ should have taken this into account when weighing Dr. Hrinko's opinions. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Dr. Hrinko's explanation also reasonably implies that Plaintiff did not embellish her symptoms to Dr. Hrinko. The ALJ should have likewise considered this when weighing Dr. Hrinko's decision to credit Plaintiff's subjective

11

statements.

The ALJ next discounted Dr. Hrinko's opinions on the ground that he did not rely on "his own objective findings" or "objective observations of her mood or demeanor." (Doc. #6, *PageID* #227).   Lack of objective evidence supporting Dr. Hrinko's opinions about Plaintiff's mental-work abilities is contrary to the U.S. Court of Appeals for the Sixth Circuit's recognition that:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine....   In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of medical illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.   The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989) (citation omitted).   In light of this discussion in *Blakenship*, the ALJ's emphasis on the lack of objective evidence in support of Dr. Hrinko's opinions is misplaced.

The ALJ's decision is further flawed by her misunderstanding of Plaintiff's anxiety. The ALJ reported:

> Notably, the claimant told [Dr. Hrinko] that she was concerned about "potential" threats to her safety which she attributed to her lengthy history of being involved in abusive relationships.   Yet, there is no expectation that she would be working with such individual(s), and she was cooperative at the hearing, without any objective report that she even appeared anxious or

12

unable to focus.

(Doc. #6, *PageID* #227).   This, however, misses the whole picture.   Although being around abusive coworkers or supervisors would trigger or increase Plaintiff's anxiety, substantial evidence does not support the ALJ's belief that Plaintiff's mental-work abilities would be impaired only by the presence of abusive people in her workplace.   The ALJ, moreover, does not cite to or rely on substantial evidence to support her apparent supposition that Plaintiff will be able to work as long as she does not need to work with or around abusive people.   The ALJ overlooks that Plaintiff's mental-work limitations stem largely from her misperception that she is in danger or is being threatened when she is not.   Dr. Hrinko explained, "Ms. Beal is likely to have difficulty focusing her attention and concentration on work related tasks due to the intrusive nature of her anxieties and fears regarding <u>potential</u> threats to her safety."   *Id*. at 660 (emphasis added).   Dr. Hrinko further observed, "[Plaintiff] reported being hypervigilant, trusting no one, and being fearful that people are 'out after me' and 'will hurt me.'   As a result, she is anxious and [sic: probably, "in"] public and quickly returns to the 'safety' of her living quarters…."   *Id*. at 659.   Plaintiff's mental-work limitations are caused, as Dr. Hrinko indicates, by her "assumptions about others being a threat to her safety and her ongoing fears of being hurt …."   *Id*.   These problems "will make it extremely difficult to establish and maintain appropriate workplace relationships with coworkers and supervisors," according to Dr. Hrinko.   *Id*.   By overlooking these aspects of Dr. Hrinko's evaluation, and by incorrectly narrowing Plaintiff's anxiety to one causal connection, the ALJ ignored evidence regarding

the serious and unpredictable nature of Plaintiff's anxiety.

Plaintiff also challenges the ALJ's consideration of the opinions provided by her counselor Ms. Allen. She argues that instead of describing and applying the correct legal standards required by Social Security Ruling (Ruling) 06-3p, 2006 WL 2329939 (Aug. 9, 2006), the ALJ "relied upon an incomplete and mis-directed standard of her devise." (Doc. #8, *PageID*# 984). Plaintiff further characterizes as egregious the ALJ's failure to account for the longitudinal treatment Ms. Allen provided Plaintiff.

Ms. Allen status as a social worker and counselor places her outside the category of "acceptable medical sources" but within the category of "other sources." 20 C.F.R. §§ 404.1513(a), (c). ALJs must consider opinions from other sources like Ms. Allen. See Ruling 06-3p, 2006 WL 2329939, *1 (citing 20 C.F.R. §§ 404.1512, 1527) (other citation omitted). The Commissioner, through Ruling 06-03p, explains:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

2006 WL 2329939, at *3. The factors applicable to acceptable medical sources "can be applied to opinion evidence from 'other sources.'" *Id*. at *4. They "'represent basic principles that apply to the consideration of all opinions from medical sources … who have

seen the individual in their professional capacity.'"  *Gayheart*, 710 F.3d at 378 (citation omitted).  ALJs "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id*. at *6.

The ALJ rejected Ms. Allen's opinions about Plaintiff's mental work abilities.  The ALJ recognized that Ms. Allen diagnosed Plaintiff with depression with psychotic features. She continued, "A GAF score of 55 was assigned, indicating moderate symptoms. Treatment through December 2013, where the records end, was not extensive and there were apparently no concerns of serious psychosis as hospitalizations and recommendation for such is not in evidence….  Notably, mental status exams were mostly normal other than some depression or anxiety noted and some persecutory delusions only sometimes…."  (Doc. #6, *PageID* #227).  Substantial evidence does not support the ALJ's view of Plaintiff's treatment records with Ms. Allen.

Most of Plaintiff's mental-status-exam results arose relative to the anxiety and paranoia Ms. Allen frequently documented from April through December 2013.  After an initial period of crisis intervention, which stabilized Plaintiff's condition such that her GAF was 55, *id*. at 791-92, Plaintiff presented to Ms. Allen with high anxiety and paranoia. She was suffering from sleep disturbance and deprivation.  She admitted thoughts of dying and suicide with no plan.  Her mood was anxious, her insight was limited, her thought content was impaired.  *Id*. at 790.  Ms. Allen assessed her GAF at 40, *id*., which

15

by definition indicates is a far cry from a GAF of 55, because it arises from some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." DSM IV-TR, p. 34. Nine days later, Plaintiff was still experiencing high anxiety and sleep disturbance, and reported having experiencing an episode of "full blown panic." *Id*. at 789. Ms. Allen noted that Plaintiff's progress had been minimal.

Plaintiff made moderate progress before her next session with Ms. Allen. She reported much improvement with less anxiety and paranoia. This is not to say that she was free of these problems; her goals remained to reduce paranoid thoughts and reduce suicidal ideation. She had also made minimal progress in becoming comfortable around people. She was struggling with trusting people and was isolating herself in her apartment. *Id*. at 788. Plaintiff's treatment records with Ms. Allen reflect similar problems throughout the remaining session in 2013 with some periods of relative improvement in some areas. Yet, she also had ongoing difficulties, particularly with trusting and being around others. For example, on October 17, 2013, one of her goal of reducing paranoid thoughts remained unmet. She had made minimal progress to the extent she could "tell the difference between paranoia and threats of harm but knowing the difference does little/nothing to ease her fear/anxiety once she becomes fearful." *Id*. at 779. She did make progress in reducing suicidal thoughts, but she retained the goal of reducing suicidal ideation. *Id*.

In light of these and other treatment records written by Ms. Allen in 2013,

substantial evidence fails to support the ALJ's cursory and incorrect reasons for discounting Ms. Allen's opinions. Additionally, Plaintiff is correct that the ALJ ignored or overlooked the longitudinal treatment Ms. Allen provided Plaintiff in 2013, which constituted a longer period of treatment than any provided by the acceptable medical sources of record. Lastly, Ms. Allen treatment notes are largely consistent with the information and opinions Dr. Hrinko expressed in his report. The ALJ should have considered such consistency when evaluating at least Dr. Hrinko's opinions.

Tacking in a difference direction, the Commissioner contends that ALJ Motta properly analyzed a previous ALJ's decision in July 2012[7] under Acquiescence Ruling 98-4(6), 2011 WL283902 (1998) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 387 (6th Cir. 1997). Yet, because of the problems discussed above in the ALJ's weighing of Dr. Hrinko's opinion, the issue of whether the ALJ properly applied AR 98-4(6) and *Drummond* remains presently unanswered. This is so because if Dr. Hrinko's opinions postdate the prior ALJ's decision and because Dr. Hrinko's opinions, if credited, may warrant a determination different from the previous ALJ's determination.

Accordingly, Plaintiff's Statement of Errors is well taken.

## VI. **Remand Is Warranted**

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that

---

[7] (Doc. #6, *PageID* #s 273-86).

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F.3d at 746.   Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).   Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).   The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking."  *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.   Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant

18

to sentence four of § 405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether she was under a benefits-qualifying disability under the applicable five-step sequential evaluation procedure, including, at a minimum, a re-assessment of her residual functional capacity and a re-consideration of the evidence at steps four and five of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2.  No finding be made as to whether Plaintiff Felicia Beal was under a "disability" within the meaning of the Social Security Act;

3.  This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.  The case be terminated on the docket of this Court.


January 17, 2017                           s/Sharon L. Ovington
                                           Sharon L. Ovington
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).